states in this government appeal. I'll try to reserve two minutes for rebuttal. The district court erred in finding due process violations. With respect to the right to counsel, the district court imposed a gloss on the word hire, which was a translation of a translation, to negate what was conveyed to Mr. Valdivias-Soto that there are attorneys that represent non-citizens in removal proceedings for no cost. Moreover, the word hire was reasonable in conveying the right to counsel of one's own choice at no cost to the government. In fact, the word hire is regularly used to refer to the selection of individuals to perform work for the selector, whether that is for pay or for no pay. Similarly, the district court disregarded the fundamental principle that words, they have meaning within context. By finding that the immigration judge in stating that there was no remedy or that Mr. Valdivias-Soto was not eligible for any remedy, referred to remedies that were not within the power of the immigration judge or the BIA to grant, nor that the immigration judge had any reason to believe that Mr. Rosendo Valdivias-Soto was because the district court plainly erred under Palomar-Santiago by failing to separately and individually analyze whether Mr. Valdivias-Soto had satisfied 1326 D1 and D2, this court should reverse the dismissal of the indictment. I was, if I could question, I was very confused by to make an English translation of a Spanish translation of the English statement by the judge. So you focused and they focused the brief just on the word hire, but that word was not spoken to the petitioner. It was some Spanish word, I think they identify as conchatar, and I don't know what the implications of that word is. So I'm just not sure what the English translation, the Spanish translation means to us. Well, your honor, that's exactly right, which is there is some confusion here because the actual word used was conchatar. It was translated by some of the translators for purposes of the collateral attack as to hire. And I think that the parties accepted that translation, but that is just one of many translations of the word conchatar. And the district court erred by placing undue emphasis on one aspect, one gloss of the word hire to say that it meant that it necessarily meant that you had to pay for somebody and therefore it negated any further statement by the immigration judge through the translator to Mr. Valdivia Soto, that that also meant that he could go out and try to find an attorney, but there were attorneys out there who might not charge any money or charge very little money. And so the analysis I think is extremely flawed and should be rejected. Council, I have a question for you. In terms of these waivers of constitutional rights to a defense and the council, my question is what effect, if any, does Valdivia Soto's mental condition have on allowing a valid waiver of constitutional rights in this particular case? Right. Your honor, whether he validly and knowingly and intelligently waived his rights is an objective inquiry and it may encompass what he was able to understand. Including, you know, but there was no finding that he was incompetent and the record here shows that in fact he understood the colloquy with the immigration judge quite well. He asked questions to clarify his rights. For example, with respect to the right to appeal, he specifically asked if he did appeal, would he be able to get out of custody right away? When he was told that would not be the case, he then made a decision based upon that. So there is no issue of incompetency. It's true that he did not know how to read and write according to one of the notes on his file, but here the admonitions were given verbally and orally and there is no indication that he didn't understand any of that. Could I ask you about the colloquy? There's one colloquy in particular that relates to what you said that I find troubling and that is when the IJ told him that you can appeal. The IJ asked, do you want to appeal? And he replied, as translated, if one appeals, do they let them go on the same day or not? And the IJ replied in English, well, you'll be released from prison, you'll go to custody of the immigration authorities. And that was translated as after that, yes, but the prison, they send you over here, the immigration authorities, they take you. And then the IJ asked if Valdez understood and he said, as translated, yeah, then I don't want to appeal. Now, I don't understand myself exactly what the IJ was conveying here. I don't think he answered his question. If one appeals, do they let them go on the same day or not? And he said, well, you'll be released from prison and you'll go to the custody of the immigration authorities. Well, that's an immigration jail, I assume. I think that I found that fairly confusing myself. I mean, what was he saying and particularly what the defendant understood? Well, I think that what you actually said was how I understand the transcript, Your Honor, but I would just preface that by saying that the district court's finding that of invalidity of the waiver of the right to appeal was not based on this, but it was based upon the any remedy language and that is what we're appealing. As for that particular colloquy, my understanding and the way I read the transcript is that Mr. Valdivia Soto was asking, can he get out of custody, whoever's custody it might be, if he appeals. And he was advised that you would not be able to be out of custody, whether you go, whether you stay in state prison or federal prison, excuse me, state prison, or if you go into immigration custody, you are not going to be just at liberty. I was translating it over here to immigration authorities. Okay, they take you. I mean, it seems to me there was a yes or no answer to the question that Valdivia Soto asked, if one appeals, do they let them go on the same day or not? And the answer is no. And I think that that was conveyed. I mean, there was more, it was maybe more words that was necessary to say no, but it amounted to no, which is why Mr. Valdivia Soto then said he didn't want to appeal. And that was the chief concern that was animating his desire to appeal or not. But the admonition was given to him that if he disagreed with the deportation removal order, he could appeal and he could reverse the IJ. So that was made manifestly clear to Mr. Valdivia Soto. On what ground could he have, as it was explained to him, could he have gotten the IJ reversed? Well, I think the issue here is that you never know. The IJ certainly doesn't think that he's done anything wrong. So the issue is that there might be an appeal. But it's not a question whether the IJ thought he was anything wrong. I mean, he was basing it on the fact that there was an aggravated felony. That's correct, Your Honor. But he very broadly said, if you disagree with my order, the BIA can reverse that. You can change the result. If you look at the transcript, it's quite broad. And in any case, with respect to the U visa remedy, which is the issue here, which is the basis for the district court's order, there is no way the BIA would have been able to reverse the removal order based upon the availability of the U visa remedy. Because as this court said pretty recently, that's not something that's within the jurisdiction of the IJ or the BIA. So there is no prejudice and no nexus. I agree that it's not within the jurisdiction of the BIA. But if he appealed and he had a lawyer, the lawyer could have explored that. He had at least a prime official entitlement to it. And he could have explored it, not necessarily, he could have asked for a delay in the BIA proceedings so he could explore whether or not he could obtain that kind of a UJ visa. I mean, he had apparently been assaulted and he cooperated and provided information about the people who assaulted him. Certainly, but the IJ did not know that he was eligible, didn't know that he had been a victim of the crime. And separately, with respect to the right to counsel, the IJ specifically told Mr. Valdivia Soto that he had a right to counsel, he could go get one. And the only issue, he gave him a list, he gave him a list and he couldn't read the list. But he knew that the list contained things and he would be able to ask for it. The regulations ask for or require the providing of a list and the informing of the person that is a list. If he wanted to make use of the list, he could have certainly said, if he said, I want to make use of the list, there's nothing that would have prevented him from obtaining help to translate that or that the IJ wouldn't have done that. But he was asked that and he said he didn't want that. He was told he could, he had the right, he was really told that he had the right to obtain an attorney of his own choice at no expense to the government. And that there was a list of attorneys who had said to the court that they would be willing to, to the judge that they would be willing to take cases for free. And that adequately conveyed the right to counsel that Mr. Valdivia Soto had, understanding that he still chose to say no, and he had the right to represent himself. I'm quite over time, but I'm happy to answer any questions. I just have one last question. It strikes me this is a case, this is a case that might warrant mediation. Maybe, maybe it's because of my own subjective views, but I find this to be troubling and somewhat sympathetic. And, you know, have you considered that possibility or would you oppose it? I don't think that I can agree to mediation, but I agree that there's many sympathetic aspects to this case. But once an indictment has been handed down, there are ways of disposing or resolving a case through resolution discussions. I can't speak to what kind of discussions there have been as to that, but those are certainly options. Right now, the issue is that the indictment, which was, which was handed down by a federal grand jury has been dismissed and we think on invalid grounds. I think I should conclude my argument by seeking for a reversal of that decision. And if there is time to give any rebuttal, I'd appreciate it. But I see I have way extended my time. Thank you. I'll tell you what council for your planning purposes, even though your time's up, I'm going to give you two minutes for rebuttal. Thank you very much, Judge Gould. Okay, we'll hear from the appellee. Good morning, Your Honors. May it please the court, Dejan Gantar appearing on behalf of the appellee, Mr. Rosendo Valdivia Soto. This court should affirm the district court's order below dismissing the indictment in this case. Beginning with the found that Mr. Valdivia Soto did not validly waive his right to counsel at his removal hearing. The record in this case is unambiguous. Mr. Valdivia Soto, who at the time of his removal hearing was an uncounseled non-citizen who did not speak English, could not read or write in any language, received an incompetent translation regarding his right to counsel. He was advised multiple times during his removal hearing that if you wanted an attorney for his removal proceedings, he needed to hire one. Now, this goes to a question that was posed by Your Honor Judge Aikuda earlier. The government does not dispute below that, or did not dispute during the district court proceedings, that the Spanish language term that was repeatedly used throughout this proceeding, the term contratar, connoted payment. And that was therefore an incorrect translation of what the IJ was saying. The government points to the language that says the people on that list have told the court that they will take cases for free or at low cost. So, what was the problem with that statement? Well, the problem is, Your Honor, that that statement has to be read and interpreted within the sum total of the transcript. So, if I can just turn the court's attention for a moment to page 262 of the excerpts of record, this is a declaration that was filed by a certified language interpreter in the district court proceedings below, explaining what that term meant and explaining that the term itself was incorrect. And it goes on to further explain what the correct translation would have been to convey to Mr. Valdivias what his true rights was. So, is that sentence that I just read incorrect? Are you saying that it was not meaningful? Or I'm not sure what your answer is to my question. Well, so the answer is, Your Honor, that the IJ did make a passing reference to the availability of free attorneys on this list that Mr. Valdivias was given. However, that has to be viewed within the context of Mr. Valdivias being told on at least six different occasions throughout his career that he needed to hire one. And another point I would make is that the IJ referred to this list that was given to Mr. Valdivias as a legal services list, not a free list or a list of free attorneys, which is what it is and what it's supposed to be. It was repeatedly referred to as a list of legal services. The IJ at one point during the removal proceeding did make a passing reference and told Mr. Valdivias that the attorneys on that list had indicated they could take cases for free of charge and others for a low fee. That's the only time there was any mention of free attorneys during this removal proceeding. And again, that has to be... And so your position is that it's insufficient to make this statement? Is that your position or am I misunderstanding? I'm sorry, Your Honor, you cut out there for a moment. I'm sorry. I was saying, is it your position that the statement that there's a list of lawyers who will take the case for free has to be stated multiple times? Not necessarily that it has to be stated multiple times, Your Honor, but that one passing reference did not cure the earlier... I don't know what passing means. The judge stated what he stated, which he said was you could get an attorney for free. So I'm not sure what passing means. Well, because it was told to him after he had been told multiple times that he needed an attorney, he needed to pay for an attorney if he wanted to have an attorney for his removal proceedings. And furthermore, that reference did not adequately convey or articulate what the actual right was. In other words, this list that Mr. Valdivias had been given was actually a list of free attorneys, and that's what that list is required to be. But the IJ's reference to there being attorneys on there who could take cases for free and others for a low cost did not correctly or adequately convey to Mr. Valdivias the overall, the scope of that right, the right to counsel, to free counsel. Of course, I think it's important to note it in its order below, telling him that. I think the regulation just requires the IJ to advise the respondent of the availability of pro bono legal services. And the only, the only thing the regulation requires is to advise that and to give him a list of pro bono legal service providers. That's all the regulation says. So was that regulatory requirement fulfilled? I don't believe it was adequately fulfilled here, Your Honor. And as the district court noted in its order below, telling a man that there's attorneys on that list who can take cases for free and others for low cost is not the same as telling him that he has a right to counsel at no expense to the government, especially when he was told multiple times that if he wanted an attorney, he needed to pay for one. Your Honors, with my remaining time, I would like to just briefly shift over to the waiver of appeal issue, unless the court has any further questions regarding the counsel waiver. But for the same reason that is, he was given an incorrect translation, an incompetent translation regarding his right to counsel that extended to the waiver of appeal, because he was also told at one point during toward the end of the proceedings that if he needed an attorney on appeal, he needed to hire one. Isn't it clear that the reason that he didn't ultimately get an attorney was because he believed that he had no remedy on appeal. And that was the reason for his decision not to appeal. And it seems that he under whatever his neurological or intellectual deficits may have been, he understood that. So, and that's right, Your Honor, that's a distinct issue from the incompetent translation, which again, the district court correctly found that the IJ gave him a blanket sweeping misadvisement that he was not eligible for any relief or remedy. So, would the IJ have been able to give him any relief? So, Your Honor, I believe the court's question pertains to the government's point that the IJ was not able to provide him UVISA relief. The issue with that is that it mischaracterizes what Mr. Valdivius is positioned below. But is that correct? Could the IJ have given him any relief based on his understanding that he had committed an aggravated felony? Was there anything within the purview of the IJ and the BIA on appeal? Well, I don't think so under these circumstances. But of course, Mr. Valdivius, had he been competently advised as to his right to counsel, could have had an attorney explore that issue of UVISA eligibility for him. The removal proceedings could have been stayed. The removal order could have been perhaps even vacated had he been successful in acquiring a UVISA. But the issue is not that the IJ did not advise him about his eligibility for a UVISA. Mr. Valdivius never took that position. And the district court did not find any error on the IJ's specifically did not advise him regarding his eligibility for UVISA. The issue was the sweeping announcement that the IJ gave him miscategorical exclusion when he said, you're not eligible for any relief or remedy, which was the functional effect equivalent of telling Mr. Valdivius, appealing is futile. There is no reason for you to appeal. And Mr. Valdivius is... You may have rights, I may be mistaken. He repeated that several times. You can ask the Board of Appeals to determine if I did something unfair, etc. They didn't actually say that, right? That an appeal would be futile? No, Your Honor. But I think if we look at to Cisneros Rodriguez, which the district court applied to the circumstances here, it's dysfunctional case was told that an attorney could not help her. Here, Mr. Valdivius was told, there is no relief or remedy. I thought Cisneros Rodriguez said, you can't have an attorney, you can't see a judge. There's nothing anyone can do for you. And that seemed a little bit down front, right? The circumstances are different. But ultimately, I think Cisneros came down on this point, Your Honor, that the defendant there was told that an attorney could not help her and in response to that misadvisement, entered a waiver of her right to counsel, rendering her right to counsel or her waiver rather, invalid. And Your Honors, with my very remaining time, it looks like I've run out of time. Mr. Kantor, because I'm giving Ms. Chan an extra two minutes, you can also have an extra two minutes if you need. Could I ask you, did you make an effort to try and persuade if not, either the criminal division or the solicitor general not to appeal? Your Honor, there were some negotiations regarding resolution below. I do not recall specifically whether those negotiations continued after the government had filed its notice of appeal and had elected to continue. The government often files a notice of appeal as a protective order, as a protective notice, because there's a time limit in which they have to file a notice of appeal. But they still have to get the authorization of the criminal division and ultimately the solicitor general. And there are people who try, there are lawyers who try and persuade the government against appealing, particularly in a case that has seemed somewhat sympathetic. I mean, I suggested mediation because all these immigration cases just got jumbled up in my mind, but mediation is not required here because the Department of Justice could do what it pleases. So, you feel you've exhausted that avenue? I'm not sure whether it's been exhausted, Your Honor, but I do not recall specifically whether there were any negotiations that continued after the government's filing of the notice of appeal. And just, if I may, Your Honor, one final point I would like to make is that the district court correctly found that D1 and D2 were satisfied based on this court's precedent, which is firmly rooted in the Supreme Court's decision in Mendoza-Lopez, which stands for the constitutional proposition that if a waiver of appeal or counsel in a removal proceeding is rendered invalid, that independently satisfies D1 and D2. And for those reasons, Your Honors, we would respectfully request that this court order the district court affirms. Thank you. Thank you, counsel. And Ms. Chan, we have two minutes on the clock for you. Thank you, Your Honor. With respect to the right to counsel, I have a few points just to make. First is that there is no contention that the English advisement given by the immigration judge was improper or inadequate. The sole issue here is whether the translation and the use of the word contratar, which was translated as hire, distorted that. And that word, as I mentioned earlier, adequately conveys the essence of the right here, which is not the right to a free attorney. This is not a criminal situation where a person has a right to an appointed attorney if they're indigent. They have simply a right to be represented by one's own counsel or choice of counsel with no expense to the government and to be apprised that there are lists of attorneys who are willing to provide services for free, but not necessarily that they would provide Mr. Valdivia Soto with free services even if he went and reached out to them. There is no entitlement to a free attorney. The other thing is that the word hire is regularly used to refer to the selection of somebody for working purposes, even if it's unpaid, as when, for example, our office and perhaps the FPDs and perhaps the judges, too, hire unpaid legal interns to come and work for a summer. So here I think that there is really no issue about the right to counsel advisement. In fact, Mr. Valdivia Soto has never said that, but for the use of the word hire, he would have actually sought to obtain an attorney. Secondly, with respect to the right to appeal, the district court's finding that any remedy was so comprehensive as to comprehend any remedy, the universe really just, again, divorces the words from the context, which is an immigration proceeding at which the immigration judge is looking at what remedies the immigration judge can provide. And finally, with respect to the Palomar-Santiago issue, it is just incorrect what counsel says about the actual analysis, and that's clear from the order. The court, under previous case law, collapsed the inquiry, and that was plainly erroneous under Palomar-Santiago. We ask this court, please, to reverse the district court's dismissal of the indictment and allow the proceedings to proceed, including whatever negotiations there may be between defense counsel and government at that point within the district court. Okay, thank you, counsel. Can I ask one question about language in Cisneros? As I understand it, we held that Cisneros was able to show prejudice from the violation of her right to counsel because, quote, it is plausible that had the ICE agent not told Cisneros that a lawyer would not help her, she would have been able to apply for a U visa. And this was true even though the ICE agent did not know that Cisneros was facially eligible for a U visa because a competent lawyer would have discovered that she was eligible for a U visa, would have informed ICE, and would thereby have prevented immediate removal from the United States. How do you distinguish that language? Right, I think the issue in that case was that there was a direct and very specific advisement that an attorney could not help Cisneros Rodriguez at all. And there was no such advisement here. The advisement was simply that based upon, and you look at the context of what the IJ said to Mr. Valdivia Soto, the IJ said, did an analysis of his prior felony and that this was an aggravated felony. And based upon that, the next thing he said is, well, you know, you are not eligible any remedy. And then says, you know, I have to order you removed. And then says, but you can appeal if there might be some error because what I did and what my order is, is completely wrong. And so the context of all of that makes clear that there is nothing like the absolute advisement that was given in Cisneros Rodriguez, which is don't bother getting an the IJ here, even if the IJ should have comprehended that there was the U visa, even if it were thought about in an absolute way, there's really no nexus between that and the relief that Mr. Valdivia Soto could have obtained had he appealed. Again, Zamorano is very clear that the IJ and the BIA cannot grant a U visa. And that's distinct from the right to counsel issue. But the court in Cisneros Rodriguez said a competent lawyer would have discovered that she was eligible for a U visa would have informed ICE and would thereby have prevented Cisneros immediate removal from the United States. And the ICE agent under this in the language I read to you, didn't know about U visas. That is true. But here we have both things, which is that there's, it wasn't within the power of the IJ or the BIA to grant the U visa. And also the only right that Mr. Valdivia Soto had is for the IJ to advise him of any eligibility for relief that the IJ has a reason to know. The IJ can't possibly know about all this. And that is pretty clear from the case law in this court that the IJ is not responsible for everything. And in fact, in sentencing, for example, and in many other contexts, we don't expect that judges need to qualify everything they say to say based upon only what I know in the record right before me, you are not, for example, eligible for a presidential pardon. When we talk about advising somebody after sentencing of their right to appeal and to have remedy, we don't expect the district court to advise a defendant of the universe of ways in which they might be able to get out of their sentence or get out of serving their sentence. But really what is within the power within the judicial system, not what might be presented through some other agency or other branch of government. I read to you from the agency that if I'm appointed to represent you, let's say on a deal or before the IJ, and I become aware that you may be eligible for a U visa, I would be obligated almost to make an effort to inform the ICE and obtain that UJ visa, which would prevent the immediate removal. And then in that particular case, it wasn't the IJ who was giving faulty warnings, it was an ICE agent. But I've made my point and you've answered it. I don't want to keep it. Thank you, Your Honor. Yeah, I'm afraid your extended time is up with an additional five minutes beyond the two minutes we gave. But I do appreciate your responding to all the questions. Unless Judge Corman or Judge Ikuta have a further question now, this case shall be submitted and the parties will hear from us in due course.
judges: GOULD, IKUTA, Korman